# EXHIBIT N

<pre>
 1                UNITED STATES BANKRUPTCY COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                         --oOo--

 4  In Re:                    ) Case No. 2:17-bk-19548-NB
                              )
 5  LAYFIELD & BARRETT, APC,  ) Chapter 11
                              )
 6           Debtor.          ) Los Angeles, California
    _____  ) Tuesday, September 10, 2019
 7  RICHARD M. PACHULSKI, CHAPTER ) 2:00 p.m.
    11 TRUSTEE,               )
 8                            ) Adv. No. 2:19-ap-01071-NB
             Plaintiff,       )
 9                            )
    vs.                       )
10                            )
    LAYFIELD,                 )
11                            )
             Defendant.       )
12  _____  )
    PIMENTEL,                 ) Adv. No. 2:19-ap-01069-NB
13                            )
             Plaintiff,       )
14                            )
    vs.                       )
15                            )
    LAYFIELD, et al.,         )
16                            )
             Defendants.      )
17  _____  )
    In Re:                    ) Case No. 2:18-bk-15827-NB
18                            )
    PHILIP JAMES LAYFIELD,    )
19                            )
             Debtor.          )
20  _____  )
    PACHULSKI,                ) Adv. No. 2:18-ap-01233-NB
21           Plaintiff,       )
                              )
22  vs.                       )
                              )
23  YOUNG, et al.,            )
                              )
24           Defendants.      )
    _____  )
25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
</pre>

*Echo Reporting, Inc.*

ii

HEARING RE: MOTION TO COMPEL
CHAPTER 11 TRUSTEE TO FILE
INCOME TAX RETURNS, PAYROLL
TAX RETURNS, ISSUE W-2S, PAY
REQUIRED TAXES DUE, FILE
APPROPRIATE CARRYBACK RETURNS
AND DISCHARGE DUTIES REGARDING
EMPLOYEE BENEFIT PLANS

CONT'D STATUS CONFERENCE RE:
CHAPTER 11 CASE

CONT'D STATUS CONFERENCE RE:
COMPLAINT FOR AVOIDANCE AND
RECOVERY OF PREFERENTIAL
TRANSFERS

HEARING RE: MOTION FOR RELIEF
FROM STAY

HEARING RE:  MOTION FOR ENTRY
OF AN ORDER FINDING DEPARTMENT
OF TREASURY (INTERNAL REVENUE
SERVICE) IN WILLFUL VIOLATION
OF THE AUTOMATIC STAY AND
ASSESSING SANCTIONS INCLUDING
ACTUAL AND PUNITIVE DAMAGES

HEARING RE:  DEBTOR'S MOTION
TO DISQUALIFY CHAPTER 7
TRUSTEE

HEARING RE: DEBTOR'S OMNIBUS
MOTION TO STAY BANKRUPTCY
PROCEEDING AND ALL RELATED
ADVERSARY PROCEEDINGS

HEARING RE: MOTION TO DISMISS
1ST AMENDED COMPLAINT PURSUANT
TO RULE 7012 AND RULE 12(B)(6)
OF THE FRCP

HEARING RE: PHILIP LAYFIELD'S
MOTION FOR JUDGMENT ON THE
PLEADINGS

*Echo Reporting, Inc.*

iii

```
                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE NEIL BASON
                 UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Richard M. Pachulski,    JAMES K.T. HUNTER, ESQ.
  Chapter 11 Trustee:        MALHAR S. PAGAY, ESQ.
                             Pachulski, Stang, Ziehl
                                & Jones
                             10100 Santa Monica Boulevard
                             13th Floor
                             Los Angeles, California 90067
                             (310) 277-6910

For Fred Hickey:             DAVID FARKAS, ESQ.

For Wel-Gen Standard, LLC:   ROGER JONES, ESQ.

For Philip Layfield and      PHILIP LAYFIELD, pro se
  Layfield & Barrett, LLC:

For Rodney Pimentel:         YANA G. HENRIKS, ESQ.
                             McMurray Henriks, LLP
                             811 Wilshire Boulevard
                             Suite 1640
                             Los Angeles, California 90017
                             (323) 931-6200

For Wesley Avery, Chapter    JEFFREY I. GOLDEN, ESQ.
  7 Trustee:                 Weiland, Golden, Goodrich
                             650 Town Center Drive, Suite 600
                             Costa Mesa, California 92626
                             ((714) 966-1000

Court Recorder:              Shemainee Carranza
                             United States Bankruptcy Court
                             Edward R. Roybal Federal
                                Building
                             255 East Temple Street
                             Los Angeles, California 90012

Transcriber:                 Tara Jauregui
                             Echo Reporting, Inc.
                             2160 Fletcher Parkway, Suite 209
                             El Cajon, California 92020
                             (858) 453-7590
```

1

1   LOS ANGELES, CALIFORNIA TUESDAY, SEPTEMBER 10, 2019 2:00 PM

2                          --oOo--

3       (Call to order of the Court.)

4           THE COURT:  That brings me to the last matter for

5   today, the Layfield-related matters, and why don't I start

6   with getting appearances from parties on the phone.

7           As usual, I'll state the order in the which I want

8   people to make their appearances, so that we're not all

9   talking at once; so I'll start with Mr. Hunter.

10          MR. HUNTER (Telephonic):  Good afternoon, your

11  Honor.  James Hunter appearing on behalf of Richard M.

12  Pachulski, Chapter 11 Trustee.

13          THE COURT:  Thank you.

14          Mr. Pagay?

15          MR. PAGAY (Telephonic):  Good afternoon, your

16  Honor.  Malhar Pagay, Pachulski, Stang, Ziehl and Jones,

17  also appearing on behalf of Mr. Pachulski.

18          THE COURT:  Thank you.

19          Mr. Farkas?

20          MR. FARKAS (Telephonic):  Good afternoon, your

21  Honor.  David Farkas appearing for Claimant, Fred Hickey.

22          THE COURT:  Thank you.

23          Mr. Jones?

24          MR. JONES (Telephonic):  Good afternoon, your

25  Honor.  Roger Jones on behalf of Wel-Gen (phonetic)

2

1  Standard, LLC.

2          THE COURT:  Thank you.

3          Mr. Layfield?

4          MR. LAYFIELD (Telephonic):  Good afternoon, your

5  Honor.  Philip Layfield.

6          THE COURT:  Thank you.

7          Let's see.  For Creditor Pimentel?

8          MS. HENRIKS (Telephonic):  Good afternoon, your

9  Honor.  Yana Henriks for Rodney Pimentel.

10         THE COURT:  Thank you.

11         And, let's see, Mr. -- I think that's everybody on

12  the phone.  Have I missed anybody on the phone?

13      (No response.)

14         Okay, Mr. Golden.

15         MR. GOLDEN:  Thank you, your Honor.  Jeffrey

16  Golden of Weiland, Golden, Goodrich on behalf -- special

17  counsel to the Trustee, Wes Avery.

18         THE COURT:  The Chapter 7 Trustee, as opposed to

19  to Chapter 11 Trustee, right.

20         MR. GOLDEN:  I'm sorry.  The Chapter 7 Trustee in

21  the Philip Layfield bankruptcy case.

22         THE COURT:  Yes, thank you.  Okay.

23         All right.  So I was able to post tentative

24  rulings.  I have a couple of copies here.  I don't know if

25  -- it looks as if I've only got Mr. Golden present in court,

3

1 but you can approach and get a copy.  For the other parties,

2 I'm going to presume that you've been able to look on line

3 and see the tentative ruling, but let me know if you have

4 not.

5      (No response.)

6            Okay.  All right, so --

7            MS. HENRIKS:  Not yet, but I'm going to have my

8 law clerk pull right now.

9            THE COURT:  All right.  So let me start with Mr.

10 Layfield.  I'm presuming you want to be heard on the issues

11 addressed in the tentative ruling?

12            MR. LAYFIELD:  Thank you, your Honor.  So I think

13 probably the most appropriate way to approach this is to

14 first address your tentatives on the proofs of service,

15 since those apparently effect all of the motions.  So I'd

16 like to address those first and then we can get into the

17 substantive matters of each of the various motions in the

18 order that you prefer; is that --

19            THE COURT:  That sounds good.  Thank you.

20            MR. LAYFIELD:  Okay.  So with respect to the

21 proofs of service, I'd like to point out that approximately

22 12 months ago your Honor issued an order implementing a

23 special procedure, with respect to the handling of proofs of

24 service, the serving of documents, et cetera.  There is some

25 specific language in that order and for approximately the

*Echo Reporting, Inc.*

4

1  last 12 months I've been following that language.  The Court

2  has accepted the proofs of service that have been filed.

3  Nothing has substantively changed over the last 12 months.

4  There has been approximately two dozen documents that have

5  been filed in accordance with that order.  The Court has

6  accepted them, no one has challenged them, no one has argued

7  about lack of proper service and now the Court, sua sponte,

8  has decided that it's going to make an attack on all motions

9  based on what the Court believes is a lack of proper

10  service.

11          My argument is that the Court has inherently

12  waived that argument, because the Court has accepted this

13  method of service for approximately 12 months.  So I believe

14  that the Court is wrong.  I believe that the Court is using

15  this, what is perceived to be, a lack of proper service, as

16  a way to issue rulings to deny certain motions that have

17  merit.  And so, rather than getting into a substance of

18  whether someone received notice, whether any of it was

19  properly issued, I think it's really a waste of time at this

20  point, because the record reflects what the record reflects,

21  that this Court felt that I was in compliance for the last

22  12 months and then all of a sudden the Court decides I'm not

23  in compliance.

24          There is a much easier way to handle this, much

25  more professional and appropriate way to handle this.  There

5

1 could have been a notice given, there could have been a

2 tentative given, there could have been something raised at

3 one of the hearings alerting me that the Court believes now,

4 after 12 months of following the same exact procedure, that

5 that procedure is no longer adequate.

6        With respect to the Court's comments about a party

7 in interest signing the proofs of service, the Court is

8 wrong.  I didn't sign any of those proofs of service.  So

9 where the Court believes that I signed those proofs of

10 service, I don't know where the Court is looking, but the

11 Court is obviously looking somewhere that it doesn't exist.

12        And so with that, I'm not going to waste anymore

13 time dealing with the proofs of service issues.  I think

14 that we could easily cure the proofs of service issues, we

15 could continue hearings.  There is many things to do, other

16 than striking a motion, which is an extreme remedy.  And to

17 find that there is an abusive tactic in some way, by filing

18 a motion and filing a proof of service, that's been done the

19 same way for 12 months, which was in good faith believed to

20 be in compliance with the order that your Honor issued 12

21 months ago, I think it's just improper and it's offensive on

22 a personal level.

23        So if you'd like to now address the substantive

24 motions, I think I'm ready to do so.

25        THE COURT:  Why don't you go ahead.

6

1          MR. LAYFIELD:  Okay.  So as you have them in the

2    tentative, I think that the first matter appears to be the

3    matter with respect to the motion to compel the filing of

4    the tax returns; is that --

5          THE COURT:  Yes.

6          MR. LAYFIELD:  Okay.  Your Honor, this should be a

7    relatively simple motion.  As the Court is aware, there is a

8    claim in the Layfield and Barrett estate, that they were

9    withholding taxes that may or may not have been filed -- or

10   paid appropriately.  There is a claim about potential

11   withholding tax returns not being filed, and there's a very

12   simple rule that the IRS looks to for who is ultimately

13   responsible for the payment of withholding tax returns when

14   withholding taxes are not paid appropriately.  There have

15   been no findings with respect to this.  There has been no

16   litigation with respect to this.  There has actually been

17   not even an opinion or anything raised with respect to this,

18   in a substantive way.

19          I have learned that the Chapter 11 Trustee has not

20   filed the corporate tax returns for 2016, has not issued W2s

21   and based on the instructions that I gave the Chapter 11

22   Trustee at the commencement of the case, I informed the

23   Chapter 11 Trustee that the law firm's CPA, Jeff Bullock

24   (phonetic) of Elevation Tax out of Salt Lake City, was

25   ready, able and willing to file the 2016 Corporate 1120.

7

That 1120 was -- the initial draft showed a loss for the year 2016.  That would have allowed the Chapter 11 Trustee to then take that loss return and file what is commonly referred to as a "carryback return" to claim a refund for the substantial amounts of tax that were paid at the corporation level in 2015.

Mr. Pachulski was informed that he could use that refund to pay any withholding taxes that may or may not have been due.  Mr. Pachulski just ignored that advice.  Based on the opposition papers, not only did Mr. Pachulski ignore that advice, but he hasn't sought out any advice regarding those issues.  He has just decided to sit on his hands and do nothing.  And the Court in its tentative calls that "solid business judgment".  That's not solid business judgment.  That's what we call burying your head in the sand.

And so the problem is that it's not just that I either have standing or don't have standing, and I'm not going to address that at this point, but there are numerous other people that are potentially responsible for any unpaid withholding taxes.  Any officer or director is responsible, by statute.  So that would mean -- and I have names of Todd Layfield, Joseph Barrett, Jeff Pannebaker, who is the CFO. Also the person who handles payroll tax returns and processing of payroll is a woman named Denise Kessler

8

1  (phonetic), and also the Chief Operating Officer, Rita Mims
2  who actually was writing payroll checks.  So all of those
3  people have interest in making sure that these withholding
4  taxes are paid, because when the dust ultimately settles, if
5  the IRS isn't paid, then the IRS can look to those people.
6  And the purpose of my motion is to ask this Court to not
7  only compel the Trustee to do a minimal amount of work to
8  resolve this issue, not just for myself, but for the other
9  affected parties, but to at least inquire.  And this Court
10 is apparently unwilling to ever question the judgment of
11 this Chapter 11 Trustee and wants to find every way possible
12 to deny any motion that I bring.  And then not only deny a
13 motion, but then try to find an improper purpose where there
14 is no improper purpose, no evidence.
15         Just because a lawyer for the Trustee decides to
16 file and make accusations and tries to bootstrap me in a
17 criminal matter that has nothing to do with a simple request
18 to have withholding taxes paid, I find it absurd. I find it
19 -- that's actually an abusive tactic.  Mr. Pagay knows that
20 the criminal matter has nothing to do with a request to
21 basically do a basic function that a Chapter 11 Trustee is
22 required to.
23         And so I think that this Court should inquire.
24 This Court should ask why, why has the Chapter 11 Trustee
25 done nothing, as far as records, forensic accounting, tax

9

1   advice.  The only thing this Chapter 11 Trustee is doing is

2   churning fees, suing other people and accomplishing nothing.

3   And so I think it's totally appropriate for me to ask for

4   the Trustee to file tax returns.  There's no improper

5   purpose and the fact that this Court is stretching and

6   reaching and gasping and breathlessly trying to find an

7   improper purpose in what is a simple motion, again,

8   personally offensive.

9            And with that, I'll rest on that matter, your

10  Honor.

11           THE COURT:  All right.  The next matter, I think,

12  is your motion for relief from the automatic stay.

13           MR. LAYFIELD:  And that again, your Honor, this

14  should be what is such a simple process.  There's no

15  prejudice to the estate.

16           As you're aware, the Trustee holds active to the

17  estate the things that are inherently personal to the

18  Debtor, the Trustee does not hold.  I mean, does the Trustee

19  have to decide whether I can get married?  Does the Trustee

20  have to decide whether I can go to the bathroom?  That's

21  what the Court is attempting to portray in its tentative.

22           There was a wrong that was -- that happened in the

23  United States District Court.  A process server signed a

24  false proof of service.  That false proof of service set

25  forth a series of events that never should have occurred,

10

1  because the district court never gained jurisdiction over me

2  in the Advocate Capital matter, because I was never served.

3  I'm asking for a very simple form of relief, your Honor.  I

4  want a short evidentiary hearing which the United States

5  District Judge, Andrew Guilford, is willing to undertake,

6  where a few witnesses will be called.  The witness will be

7  the owner of the property where I was allegedly served.

8  He'll testify about the fact that I've never been to that

9  property.  I wasn't there at that date and he'll testify

10 about the facts and events surrounding the alleged proof of

11 service.

12         Mr. Golden, Mr. Jones, Mr. Hunter have all called

13 me a blatant liar for even suggesting that I wasn't served

14 in the time and the manner that that process server has

15 signed under penalty of perjury.  I should have the ability,

16 just like you granted every other person who wants to sue me

17 in an ancillary proceeding, relief from stay to conduct

18 something that has no impact on the estate, no impact on the

19 Trustee, no impact on anybody whatsoever.  In fact, even if

20 the judgment -- even if I can prove, which will be very easy

21 to do, that there was a wrong committed in the district

22 court, and even if Judge Guilford decides to set aside the

23 judgment, Wel-Gen still has a proof of claim.  They haven't

24 filed a nondischargeability action.  There's no prejudice to

25 them.  Holding people accountable for wrongful conduct in

11

1   front of a United States District Court, should be of utmost

2   interest to this Court, because without that -- without that

3   judgment, there would not have been an involuntary

4   proceeding, there would not have been all of the name

5   calling, the ad hominem attacks by Mr. Golden, Mr. Hunter,

6   et cetera, basically calling me a liar for even suggesting

7   that I wasn't where they claimed I was.  And for this Court

8   to deny me the personal ability to prove that I wasn't

9   served where they claim I was served, then I understand that

10  your Honor is trying to protect all of these people that are

11  potentially implicated in this false proof of service

12  scheme.  And for that, I don't understand why.  It doesn't

13  make sense.  But the form of relief that I'm seeking should

14  be very clear and even if this Court feels that I don't have

15  standing, the Chapter 7 Trustee needs to basically make

16  decisions regarding the numerous litigations that are

17  surrounding this estate.  He either needs to abandon them,

18  or pursue them appropriately.  He is doing neither.

19          And so I would ask that the -- this Court asks the

20  Chapter 7 Trustee to address the litigations that are --

21  that he's just floundering.  That on the one hand, I'm

22  unable to do anything, because the Chapter 7 Trustee claims

23  an interest, but then on the other hand, the Chapter 7

24  Trustee is doing nothing and is potentially compromising me

25  on a personal level.

1        And so for that reason, your Honor, I just don't

2 see why you're going out of your way to prevent that hearing

3 in front of Judge Guilford, because everybody knows what's

4 going to happen at that hearing.  Everybody knows that I

5 will prove that I wasn't there.  I have the tax court

6 stamps, I have declarations that I'll present, I have live

7 testimony and the only reason why I would be denied, is

8 because for whatever reason this Court does not want those

9 who were involved to be held accountable.  And someone who

10 is reviewing this later, should be asking that question as

11 to why.

12        And to find an improper purpose, your Honor, I

13 think is even more absurd.  The fact that you even suggested

14 that in your ruling, that I'm trying to hold the hearing to

15 prove that I wasn't lying about where I was, I don't see how

16 that could be an improper purpose.  And again, personally

17 offensive that you're reaching and gasping to find improper

18 purpose where any other person who was faced with similar

19 circumstance in front of you, I don't think you'd be going

20 out of your way like this.  So, am I claiming bias?  I am

21 claiming bias.

22        THE COURT:  All right.

23        MR. LAYFIELD:  And you're --

24        THE COURT:  Go ahead.

25        MR. LAYFIELD:  I think the next motion -- is the

13

1  next matter the motion to disqualify the Chapter 7 Trustee?

2          THE COURT:  The omnibus motion to stay bankruptcy

3  proceeding and all other related --

4          MR. LAYFIELD:  I mean that's --

5          THE COURT:  Go ahead.

6          MR. LAYFIELD:  That's a simple motion, your Honor.

7  The law is clear.  The law is clear that if you are going to

8  be impacted in a negative way by asserting a Fifth Amendment

9  right, that a proceeding should be allowed to proceed.

10 Especially when I've recently learned in the last few days,

11 which I wasn't able to put into the reply briefs, is that

12 Mr. Pagay has been aggressively using estate resources to

13 try to enhance charges against me in the criminal matters.

14          Mr. Pagay has been in contact with former clients

15 of Layfield and Barrett.  Mr. Pagay has been trying to

16 solicit participation by those clients in criminal

17 proceedings.  More specifically, there is a matter In Re: --

18 regarding Mr. Johnson and I've recently come into possession

19 of discovery where Mr. Pagay is soliciting the United States

20 Attorney's Office based on a conversation he had with a

21 former client of Layfield and Barrett, which he has no

22 interest in, it has nothing to do with him, to bring

23 charges.  That's not an appropriate action by a Chapter 11

24 Trustee's lawyer, using estate resources that have nothing

25 to do with the estate.

14

1          And so because of the inter-connective nature of
2   what is being alleged in the criminal matter, vis a vis
3   what's being alleged by Mr. Pagay in the various status
4   reports, what's being alleged by Mr. Hunter in the adversary
5   proceeding and other folks, I think it's appropriate to stay
6   this matter.  This matter never should have been proceeding.
7   And so if your Honor wants to keep going, that's fine, but I
8   think the Court should take note that after 15 months, the
9   Chapter 7 Trustee hasn't filed an objection to discharge,
10  hasn't filed a nondischargeability action, hasn't shown any
11  alleged misconduct, hasn't done anything, hasn't
12  demonstrated any of the things that they were alleging at
13  the offset of this bankruptcy.
14          And so I think that a stay is appropriate.  The
15  law is clear.  The burden is met and that's what should
16  happen.
17          THE COURT:  All right.  How about the motion to
18  disqualify the Chapter 7 Trustee?
19          MR. LAYFIELD:  Yeah, I think -- this is one, your
20  Honor, that I think the tentative ruling mis-classifies the
21  status.   There's a couple of things going on.
22          Mr. Avery -- I mean if you're trying to -- and
23  this is in my reply brief -- but if you were trying to
24  gaslight somebody, this would be a very effective way of
25  doing it.  Mr. Avery is the Trustee for the Fred Adelman

15

1 Estate.  The Fred Adelman Estate commenced litigation during
2 the course of that bankruptcy against Layfield and Barrett,
3 against me personally and numerous other attorneys, that
4 were employed at Layfield and Barrett.  There was a proposed
5 settlement of that matter prior to the commencement of the
6 involuntary bankruptcy in my matter and that settlement was
7 never consummated.

8          When Mr. Avery accepted his appointment as the
9 Chapter 7 Trustee, Mr. Avery had an obligation to disclose
10 conflicts and being on both sides of the litigation, I don't
11 think anybody can claim, even in this case where absurdity
12 rules, that being on both sides of litigation and having the
13 ability to affect the outcome of both sides of litigation,
14 is a conflict.  He held an interest against my involuntary
15 estate and he chose not to disclose it to the United States
16 Trustee's Office and now he's trying to avoid even
17 addressing the matter, by claiming that there's a procedural
18 defect, or -- you know, this Court could make a very simply
19 inquiry and just ask Mr. Avery why he didn't disclose it.
20 Instead, we're playing games and I don't think that's
21 appropriate.  I don't think -- a Trustee should be held to a
22 higher standard.  A Trustee should be held to disclose what
23 he was required to disclose, and if he didn't, he should be
24 held to answer for it.  And this Court refuses to do that.
25 This Court refuses to even ask Mr. Avery why he didn't

16

1 disclose the fact that he held a competing interest -- an

2 adverse interest -- to my estate.

3          The other -- the other matter that this Court

4 refuses to address is the -- is who's funding Mr. Avery?

5 Who is paying Mr. Golden's bills?  It's been 15 months.

6 There's been have no fee applications, there has apparently

7 been no assets recovered.  If Mr. Avery is being funded on,

8 what I'll call a witch hunt, to try to find what they think

9 are undisclosed assets, by a third party, that's also a

10 conflict, your Honor.  There is no more pure conflict than

11 having your bills paid by someone other than the U.S.

12 Trustee or this Court authorizing a payment.  And so the

13 fact that no one will address it, everyone is ducking behind

14 proof of service issues, claims of lack of evidence.  Well,

15 your Honor, I don't know how I can show evidence as to who

16 is paying Mr. Golden's bills on behalf of Mr. Avery, because

17 I don't have the ability to obtain discovery.

18          And so all I'm asking is that this Court asks a

19 question, use the Court's power to ask the question, who is

20 funding this?  And if that shows a conflict, I think the

21 Court should be very disturbed.  This Court should be

22 disturbed by the lack of disclosure of the Adelman issue.

23 The Court should be disturbed by the lack of candor, with

24 respect to who's funding Mr. Avery's special counsel fees

25 and the CBIZ (phonetic) fees for the financial advisory

17

1 services.  I mean these are very simply things, your Honor.

2 And to claim that there's some improper motive, or improper

3 purpose, bring another trustee in, I don't care.  That's

4 what should happen.  If this Trustee can't be trusted,

5 because he's done two things that show a lack of candor,

6 one, failing to disclose a conflict, two, being funded by a

7 third party, or refusing to address who is funding him.  I

8 think it's just such a simple matter, your Honor, and for

9 you to go out of your way to not inquire, again, a reviewing

10 party -- a reviewing body will be asking that same question.

11 So if that's how the record wants to stand, that's how your

12 Honor wants the record to show, that this Court is refusing

13 to act, so be it.  There's nothing else -- there's nothing

14 else I can do at this point.  I've raised an issue.  The

15 Court refuses to address it.

16        THE COURT:  All right.  Then I didn't include

17 tentative rulings on the <u>Pachulski vs. Layfield</u> adversary

18 proceeding motion for judgment on the pleadings.  Briefly,

19 my oral tentative ruling is to deny the motion for the

20 reasons stated in the opposition.  So why don't you address

21 that issue.

22        MR. LAYFIELD:  Okay.  Well, first and foremost, in

23 order to bring a fraud claim, you're required to plead with

24 specificity.  Pleading with specificity requires a

25 heightened pleading standard.  All of the allegations that

18

1 are against me are based on information and beliefs and I've

2 cited the cases that show that information and belief is

3 insufficient for supporting fraud allegations.  That's the

4 first issue.

5          The second issue is, the Trustee's opposition is

6 lacking in many things.  The same things that your Honor

7 criticizes me of, the Trustee did exactly -- even worse.

8 The Trustee didn't cite one case.  The Trustee didn't cite

9 one statute.  The only thing the Trustee cites is a

10 secondary source and it's not even an accurate citation,

11 with respect to -- it's not even an issue that directly

12 addresses my motion.  The Trustee has no damages.  The

13 Trustee has made no allegations to support its causes of

14 action and for your Honor just to follow an opposition -- I

15 mean this is what -- this is what's done every single time.

16 Someone files an opposition and your Honor just says, "Okay,

17 fine."  This is absurd.

18          There is -- that is the most bare bones pleading.

19 It lacks the technical information to support its claims and

20 I think what the Court should really be focused on is the

21 fact that the Trustee is trying to assert claims of third

22 parties.  I mean I don't know how your Honor can deny this

23 motion.  This motion is so clear cut.  The law is so clear.

24 The Trustee's failure to follow the law is so clear, the

25 Trustee is caught here.  The Trustee screwed up, because the

19

1 Trustee has no claim.  The Trustee -- in order to prove

2 fraud -- the Trustee hasn't proven fraud.  There is

3 elements, your Honor.  They haven't met the elements in

4 their pleading and that's what is so devastating about a

5 12(c) motion.  There's no chance to amend and the Trustee

6 chose to go with this pleading.  The Trustee chose to not

7 independently verify any of the facts.  The Trustee chose to

8 do everything on information and belief and for those

9 reasons, the Trustee fails.

10         If this were in Article 3 court, this case would

11 be gone.  Done.  Over.  The Trustee has failed to satisfy

12 the law and -- I mean, is your Honor trying to tell me that

13 it just agrees with the opposition?  I mean there's nothing

14 in the opposition that addresses the matters that I raised

15 in my motion.  And so your Honor is basically saying, you

16 think that there's a viable claim here, that we're going to

17 waste the judicial resources and hold a trial on this matter

18 and then the Trustee is going to lose?  This is just -- I

19 mean I practiced for 20 years, your Honor.  I've never in my

20 life had rulings like I've had in this case.  Even the most

21 basic motions, even the most clear cut law, you are going

22 out of your way to do something.  There's an agenda, which I

23 don't understand fully yet, but clearly and this is a record

24 so that when the Ninth Circuit looks at this, they're going

25 to want to look at the same reason and say, "Why?"

20

1        So I mean are you even going to ask the Trustee to

2  argue?  I mean are they even -- are they even arguing?  I

3  mean your tentative ruling is to grant, based on their

4  opposition with no law cited.  Your Honor, I'm trying to

5  understand what's going on here, procedurally.  Is that

6  what's happening right now as we speak?

7        THE COURT:  Mr. Layfield, if you want, you can

8  finish your argument and then I'll hear from the Trustee and

9  the other parties.

10        MR. LAYFIELD:  Okay.  Your Honor, I mean I think

11  it's very clear.  The Rule 8 standard hasn't been met.  The

12  Rule 9 standard hasn't been met under <u>Twombly</u> the

13  specificity hasn't been met and I'd like to hear how this

14  Court -- I mean because there's no ruling -- how this Court

15  thinks that the Trustee has satisfied the plea requirements.

16        And with that, I'll submit.  Obviously, subject to

17  a reply to whatever the Trustee argues.

18        THE COURT:  All right.  That's on that last of the

19  specific items.  Anything else?

20        MR. LAYFIELD:  I mean there's the Pimentel matter.

21  There's the 12(b)(6) motion.

22        THE COURT:  So why don't you address the Pimentel

23  matter.

24        MR. LAYFIELD:  Yeah, I think if your Honor looks

25  at the two causes of action, irrespective of the bias

21

1 towards me, and just reads them, it's incoherent.  There are

2 a -- what could only be described as -- a mishmosh of causes

3 of action that are not pled appropriately.  The language is

4 imprecise.  The tactic by Ms. Henriks to try to lump

5 together multiple causes of action in one, the requests to

6 try to loop in Hatfield and Gravax (phonetic) Law Firm in a

7 wild conspiracy, to which she has no evidence, and the fact

8 that she's taken inconsistent positions.  She has another

9 lawsuit against Mr. Barrett and others in superior court,

10 where she's made a different allegation of a scheme to

11 defraud.

12       And so -- I mean, you granted the first motion to

13 dismiss, because it wasn't me filing it, and it was a well-

14 taken motion.  The issue of whether a case is property, I

15 think the Court got it right in that ruling, but she's done

16 it again and she hasn't asked for nondischargeability.

17 She's asking for the Court to make rulings and findings that

18 funds are nondischargeable, funds.  And she's asking for

19 "funds" to be paid back, "funds" to be returned, "funds" to

20 be taken possession of by the Court.  All of these are just

21 procedurally improper.  I've pointed it out in my motion.

22 The opposition fails to address that.

23       I mean even if you were to just read the

24 complaints -- the second amended complaints -- or the first

25 amended complaint -- whatever it is.  It just -- you can't

22

1 even follow the reliefs.  The relief is incoherent that

2 she's requesting.  And for that reason, I think the motion

3 should be granted.

4          THE COURT:  Thank you.  All right.  Any other

5 issues?

6      (No response.)

7          THE COURT:  Okay.  Let me hear, first, from Mr.

8 Golden.

9          MR. GOLDEN:  Thank you, your Honor.  I'll be

10 brief, unless the Court has any questions.

11          I think most of the matters were already addressed

12 in the papers.  With respect to the conflict of issue -- the

13 issue to disqualify the Trustee, I just want to make two

14 points.

15          When -- there's absolutely no conflict of interest

16 that the Trustee had, whatsoever.  Total red herring.  There

17 was an abandonment that occurred, that's prior to the reason

18 of being appointed in the Layfield case.  But certainly

19 there's no conflict of interest.

20          And the funding of our firm, everything has always

21 been fully disclosed to the bankruptcy court process.

22          On the -- everything else, your Honor, I think is

23 really addressed in the pleadings.  I'm happy to address

24 them, but I haven't heard anything that was new or unless

25 the Court wants me to address something.

23

1          THE COURT:  Thank you.

2          Mr. Pagay?

3          MR. PAGAY:  Thank you, your Honor.  I don't think

4  there's much more difference from what we started with and

5  what we ended with after the oral argument.  There has been

6  no evidence presented as to the factual allegations that

7  were also again mentioned in oral argument, and again,

8  they're just oral argument.  Again, we have no evidence,

9  with respect for this matter of accusations.

10          We're certainly willing to rest on the tentative.

11  The service issue aside, we believe, obviously, that given

12  Mr. Layfield's record in this case and in the prior matters

13  and the prior orders of the Court, that we've cited,

14  particularly the one we cited in November of last year, that

15  we seem to be coming back to the Court with him every few

16  months to address a flurry of motions that may or may not be

17  relevant to what's happening in other proceedings.  But at

18  least with respect to just the merits of this motion, again,

19  there's -- as the Court has pointed out, the Trustee is

20  certainly cooperating with whatever taxing authorities have

21  information requests of him and certainly if there were

22  issues, we'd be hearing about it from those authorities and

23  they haven't certainly come before the Court.

24          So, for the reason that we've set forth in our

25  opposition, both with respect to our motion to strike, based

24

1 on the record of motions filed by Mr. Layfield in these

2 proceedings, also in respect to the absence of any evidence

3 to support any of the factual averments made in the motion,

4 and as noted by the Court, the discretion of the Trustee in

5 looking at the records before him, dealing with the taxing

6 authorities and the information they require, it's certainly

7 inappropriate to compel the Trustee to do anything to

8 continue the administering of the estate, which he's been

9 doing since his appointment.  So again, we're certainly

10 willing to rest on the tentative.

11        The other matter that I'm here to speak to, your

12 Honor, is the general status conference of the case.  I

13 don't know if your Honor wanted to keep that until the end,

14 since that's obviously much more of a general administrative

15 function, or I can address something now.

16        THE COURT:  Why don't you briefly address that

17 now.

18        MR. PAGAY:  Again, your Honor, the status is

19 pretty much what the Court sees before it is what's going

20 on.  Obviously the Court knows what the complexion of the

21 case in terms of the Trustee looking for recoveries from the

22 litigation that was -- that was -- in which the Layfield

23 firm was previously involved.  But the issue that I do want

24 to raise, and it's something that we started to raise in our

25 motion to strike, is approximately one year ago, the Court

25

1 started to consider a filing order that would prevent us

2 from coming here and Wel-Gen being dragged here and Mr.

3 Golden and Mr. Avery being forced to appear every few

4 months, every time there's a flurry of new motions.  I think

5 again, the Court would have broad powers in Section 105(d)

6 due to the authority given to the Court under a general

7 status conference under 105(d), to issue that filing order

8 so that there is some sort of prism that prevents us from

9 coming back here that we can look to you before we have to

10 respond to motions and go to court or appear in court.  So

11 I'd ask, again, if the Court consider the record in the case

12 and given the administrative convenience of the parties

13 involved and look at 105(d) as a method of issuing, either

14 directly, or after an OSC, some sort of order that prevents

15 these types of motions and these types of hearings from

16 wasting estate resources, both in the Layfield and Barrett

17 Estate and in the Philip Layfield Estate.

18          THE COURT:  Thank you.

19          All right.  Mr. Hunter, I don't know if you wish

20 to add anything different or in addition on behalf of the

21 Trustee -- Chapter 11 Trustee?

22          MR. HUNTER:  The -- your Honor, the only thing I

23 would add is that the we currently have a status conference

24 set in the dischargeability action for November 5th, 2019

25 and the -- it's my understanding is that the criminal trial

26

1  has been scheduled for January 21st, 2020.  Maybe I missed

2  it being addressed, but I would request that the Court

3  continue -- set the new status conference in the

4  dischargeability action for some time in March so that it

5  would be after the criminal trial.

6          THE COURT:  Thank you.  I'll circle back to Mr.

7  Layfield about the scheduling and other matters, but I'm

8  making a note of that now.

9          Give me just a moment.  All right.

10         Mr. Farkas?

11         MR. FARKAS:  Your Honor, actually I would echo

12 that request.  It -- Mr. Hickey has an adversary proceeding

13 filed against Mr. Layfield and there is a status conference

14 -- a further status conference scheduled for November the

15 5th of 2019.  So similarly, we would request a further

16 continuance of that until after the criminal trial

17 concludes.

18         THE COURT:  All right.  Let's see.  Mr. Jones?

19         MR. JONES:  Thank you, your Honor.  I have nothing

20 to add to what has already been said.

21         THE COURT:  Thank you.

22         Ms. Henriks?

23         MS. HENRIKS:  Thank you, your Honor.  There is no

24 tentative on our matter.  I just want to address a few

25 points.

27

1        I -- although it's probably not -- I wanted to

2   join the request, there has to be some power of the Court

3   that Court can exercise to protect everybody from these

4   kinds of proceedings and forcing us to sit through this and

5   listening to these attacks and completely frivolous

6   accusations by Mr. Layfield.

7        I have received their reply yesterday and the

8   first sentence is accusing of my client of being a murderer.

9   This is frivolous, absolutely frivolous, baseless.  You

10  know, just motion practice to harass.  We're working, we

11  have other matters we have to handle.

12       In brief -- so the point is, this is -- my client

13  has a claim of restitution that is final.  It is res

14  judicata, it's not subject to a bonafide dispute.  The State

15  Bar found and imposed restitution against Mr. Layfield for

16  stealing my client's money.  It's not inconsistent with the

17  State Bar (sic) -- I mean -- I'm sorry.  It's not

18  inconsistent with the state complaint against Mr. Barrett,

19  because Mr. Barrett didn't take the money, he has no control

20  of the trust account.  He did help Mr. Layfield to convince

21  my client to settle his $3.9 million dollar verdict and he

22  was the only attorney that my client knew.  So those are

23  completely different allegations.

24       To say that the complaint is incoherent is

25  laughable.  It's -- you know, I mean I don't know what to

28

 1 | expect anymore from these proceedings.  I'm shocked.  I was
 2 | just listening and I couldn't believe that someone would
 3 | talk to the Court the way Mr. Layfield was addressing the
 4 | Court, but I guess there is not much that can be done.
 5 | And I just want to -- you know, this whole notion
 6 | that this Fifth Amendment privilege is being used as a sword
 7 | and a shield, that seems to be inequitable to me.
 8 | The problem with his claims is just everything
 9 | isn't black and white.  We do have a complaint against
10 | nondischargeability.  I do realize the issues with the --
11 | the tracing issue, but I did explain that it's a unique
12 | circumstances surrounding my client's claim that it can be
13 | traced, because he was the last one and at the time when
14 | funds were received in the trust account, there was no
15 | money.  They had no money.  So it clearly could be
16 | distinguishable.
17 | But on the face of it, I just again don't even
18 | understand how Mr. Layfield has a standing to shield
19 | Hatfield and Gravax from cases -- or assets being traced.
20 | That's something that is new and I can't understand why he
21 | would do that.  But I think the motion has to be denied and
22 | something needs to be done to -- within the powers of the
23 | Court to stop this.  I just can't -- I can't even listen to
24 | these proceedings without -- it's just shocking how he
25 | addresses the Court.

29

1          He addressed my client -- he called my client a
2  murderer.  That's not true and if that was the case, his law
3  firm was representing my client.  The jury awarded $3.9
4  million dollar verdict to my client who was injured and so
5  it's okay for Mr. Layfield's firm to represent my client and
6  because of his past now, he decided that my client's money
7  can be stolen.  I mean that's just frivolous.  The pleadings
8  are frivolous.  The tone, the way he is addressing the Court
9  -- and it's just very sad and I have nothing to add.  The
10  motion has to be denied and hopefully the Court will do
11  something to -- not to waste everybody's resources to
12  respond to Mr. Layfield's motions.
13          THE COURT:  Thank you.
14          MR. LAYFIELD:  Your Honor, just so that we have a
15  complete record.  Ms. Henriks -- her attempt to mislead the
16  Court about her client -- just so that this is in the
17  record.
18          Mr. Pimentel spent approximately 14 years in
19  California State Prison for voluntary manslaughter, the
20  voluntary taking of another person's life.  There is no
21  dispute about that.  So his credibility is potentially an
22  issue, with respect to the fact that he is a convicted
23  felon, of which I am not.  And it's very appropriate to be
24  able to put that into a motion if there's an allegation
25  being made by Mr. Pimentel about what I did or did not say

30

1  to him and Ms. Henriks is trying to incorporate that into a

2  pleading.  Pointing out that someone has been convicted of

3  voluntary manslaughter I don't think is inappropriate.  I

4  didn't say he was ugly or comment about his children.  I

5  mean this is a fact of indisputability.  And so Ms. Henriks

6  trying to jump on this bandwagon, I think my motion is -- my

7  12(b)6 motion is well taken.  The law is clear.  Her relief

8  that she's seeking is not even cognizable.  And just like

9  Mr. -- Hatfield and Gravax firm has pointed out, it's the

10 same stuff over and over again.  And so I'll just leave it

11 at that, but I just wanted to make sure that there's a clear

12 record that calling Mr. Pimentel a murderer, or making a

13 reference to his conviction for voluntary manslaughter, is

14 fair game in a pleading when we're talking about he said/she

15 said and credibility issues.

16         THE COURT:  All right.  Well taking the last issue

17 first --

18         MS. HENRIKS:  May I --

19         THE COURT:  Taking that last -- okay, I'll give

20 you a very brief chance to reply, Ms. Henriks, but I'll give

21 you just two minutes.

22         MS. HENRIKS:  Your Honor, docket number 150, this

23 Court already ruled that Mr. Pimentel's claim is not a

24 subject to bonafide dispute, the restitution ordered by the

25 State Bar is final and not subject -- it's not something

31

1 that he said/she said, it is the ultimate law.  It is the

2 ultimate conclusion and if Mr. Layfield did not do what the

3 state bar alleged he did, he could have came from Costa Rica

4 and faced the charges and proved that he had done nothing

5 wrong, instead of letting the proceeding go and being

6 disbarred.  But that is the law, it's a final restitution in

7 an administrative proceeding and that comment was absolutely

8 irrelevant.  It's untrue about -- the Court does not know

9 the circumstances, or they're not relevant to this case.

10 And again, we are seeking nondischargeability.  Again, he is

11 conflating his two issues with Hatfield and Gravax, which he

12 has no standing for that, and my complaint against

13 dischargeability simply alleges that when attorney, using

14 his bar license, defrauds the client and steals the client's

15 property, in a most apprehensible way, that should not be

16 discharged in a bankruptcy.  That's very simple and clear

17 cut.

18         Thank you, your Honor.

19         THE COURT:  Okay, thank you.

20         All right.  On that last issue about the

21 allegations of 14 years imprisonment and so on, I'm not

22 going to -- I'm not going to take that into account

23 whatsoever.  It has not been raised properly.  It goes back

24 to the issue of abiding by the rules and procedures of how

25 and when things are raised, providing actual evidence, not

32

1 raising things in a reply brief that should be raised, if at

2 all, in the initial papers.  Anyway, I'm just, I guess,

3 impressed that we keep on going back over the same ground

4 here of just abiding by basic rules that any lawyer ought to

5 be able to follow, let alone -- or any litigant ought to be

6 able to follow, let alone somebody who is a lawyer with a

7 lot of practice.

8         So anyway, apart from that, I am persuaded in the

9 <u>Pachulski vs. Layfield</u> case to stick with my oral tentative

10 ruling.

11         In <u>Pimentel vs. Layfield</u>, I want to take further

12 look at matters, simply because it's a little hard for me to

13 understand each of Mr. Layfield's arguments and I want to

14 make sure that I'm not missing something that has some merit

15 to it.  And so I am going to take a further look at that.

16 Based on the -- my review so far and the oral arguments, I'm

17 inclined to deny Mr. Layfield's motion to dismiss for the

18 reasons stated in the Plaintiff's opposition and stated at

19 the hearing today.  But I do want to take a careful look at

20 that, because I -- again, I'm not sure that I fully -- I

21 want to be sure I fully understand Mr. Layfield's arguments

22 on that.

23         On the other issues, I want to address the proof

24 of service issue, because that is something that I've raised

25 sua sponte, so unlike the other matters where there has been

33

1  argument back and forth, I think that one deserves some

2  special attention, because that is a sua sponte issue.  But

3  I think it's one that I have to raise sua sponte.  It's --

4  in my mind, just as I -- as a federal court, I have to be

5  concerned about whether there -- this court has

6  jurisdiction, for example, and just as I have to be

7  concerned about things like standing, I think a basic

8  concept of American jurisprudence is that it's fine for the

9  Court to step back and let parties raise their own issues

10 and not raise issues sua sponte if the parties are -- even

11 know that there's something being argued.  But if the

12 parties haven't been notified, then I really have some

13 obligation, as a Court, to be concerned about the lack of

14 adherence to the service requirements.

15         I haven't gone back to take a look at the previous

16 motions that Mr. Layfield filed, and I suspect that for at

17 least some of them, like the motion to dismiss the

18 bankruptcy case that was filed before, that I should have

19 raised the issue of lack of service on all of the other

20 creditors, but the fact that I may have missed that for one

21 or more motions in the past, is -- that's -- if that was my

22 error, that's my error, but it doesn't mean that I should

23 continue to ignore a lack of proper service.  I denied the

24 previous motion to dismiss for various grounds and maybe I

25 should have added "and it wasn't property served", but the

34

1  -- there's no concept, I don't think, I'm not aware of any

2  concept that a court, by not catching an error before, has

3  waived the ability to raise that later.  And especially when

4  the rights of third parties are at issue.

5          So I think I have to raise it.  I am concerned, as

6  set forth in the tentative ruling, about a number of matters

7  that would seem to have a pretty significant impact on all

8  creditors and the bankruptcy estate as a whole, and where

9  there just wasn't proper service, or in the case of the

10 motion involving the IRS, no service in compliance with the

11 applicable national rules and the local court manual about

12 how to serve the IRS.

13         And just to be particularly clear about that, the

14 -- I think it's Rule 7004(b), and then I've forgotten which

15 subsections, I think it might be four and five, deal with

16 serving the IRS and other Governmental agencies and units

17 and there has to be service on, I think it's the attorney

18 general in Washington DC and also the local attorney for the

19 federal government and as well as the agency.  So I'm not

20 trying to hide the ball here at all.  Those things are

21 clearly set forth in the rules and in the court manual that

22 is -- that helps out by providing specific addresses.  So

23 when seeking relief against somebody, a basic concept is to

24 provide notice.  So those are my comments on the -- on the

25 proof of service issue.  Service and proof of service.

35

1    When it comes to remedies for -- for what I
2 continue to believe is Mr. Layfield's inappropriate use of
3 these proceedings, I am going to take a further look at the
4 case law.  I -- and I'm also going to go back and look at my
5 previous rulings.  I think I had already concluded at a
6 previous ruling -- a previous hearing -- that it was
7 appropriate to impose a pre-filing order, or some other form
8 of relief, but as I recall, after that I had directed my law
9 clerk to do a little research on that and then it happened
10 that Mr. Layfield went through a period of not filing as
11 many papers and I forget whether I was in the middle of a
12 transition between law clerks or what, but anyway, I never
13 followed through on that.  But I think now is an appropriate
14 time for me to revisit whether there -- whether a pre-filing
15 order some other sort of mechanism is appropriate.  Perhaps
16 holding a status conference before anyone is required to
17 file oppositions and reply papers, because it seems to me
18 that the -- there is a pattern of a lot of papers being
19 filed raising a lot of issues, but with very little citation
20 and -- to any authorities and very little evidence and it
21 really does shift the burden to other parties in a way that
22 I think is inherently unfair.  And at the same time, of
23 course, I want to preserve the right of Mr. Layfield to
24 raise any legitimate issues and so I want to be careful in
25 how I balance that and take a further look at the case law.

36

1 So I will go ahead and do that.

2          For today's purposes I'm going to adopt the

3 tentative rulings and the one issue on which I have not

4 given a definite tentative -- well a specific tentative

5 ruling, is the <u>Pimentel vs. Layfield</u> matter and I do want to

6 take a further look at that.  So I will issue a decision on

7 that separately.

8          In terms of the request to continue the status

9 conferences in a couple of adversary proceedings out to next

10 year, I am in the position that I am still -- I'm just at

11 the point of working out my calendar for next year, and so I

12 think the best approach is that probably in the next two

13 weeks, maybe three at the upside, I will be posting a

14 calendar that goes into 2020, maybe for the entire year, and

15 at that point it will be possible for the parties to meet

16 and confer, figure out about a continuation date.  And so

17 what I would plan to do is to direct the parties to do that

18 before the existing status conferences and I will either

19 post a tentative ruling for those status conferences with a

20 date that I've selected and the parties can then let me know

21 if they want to contest that tentative ruling, or the

22 parties if they have met and conferred and have come up with

23 their own agreed date, they could lodge a proposed order --

24 a stipulated order -- that would continue the status

25 conferences to whatever is one of the available dates.  So,

37

1 in other words, for now I'm not going to do anything on

2 that, but I will address it in one of those couple of ways.

3          And for the Pimentel matter, I should set a

4 continued hearing date and I'm inclined to set it for

5 October 15 at 2:00 p.m.  Is there -- although I expect that

6 I'll issue a ruling before then and that may well go off

7 calendar, but is there any objection to that October 15 day

8 at 2:00 p.m.?  Mr. Layfield?

9          MR. LAYFIELD:  If we could just do it on the 1st.

10 We have another motion that's going on that date.  That

11 would be much more preferred.

12          THE COURT:  I'm okay with the 1st.  Do you know

13 what time?

14          MR. LAYFIELD:  I believe it's 2:00 o'clock.

15          THE COURT:  Okay.  So I'll go ahead and continue

16 it to the 1st at 2:00.  I want to hear from Ms. Henriks as

17 well, but tentatively I'm inclined to continue it to the 1st

18 at 2:00, it's just between now and then I have a number of

19 other things going on, so if I don't -- if I'm not prepared

20 to -- if I haven't already issued a ruling by then, or I'm

21 not prepared to do that before the hearing, I may well on my

22 own continue it again.

23          Ms. Henriks?  Ms. Henriks, any objection to

24 continuance to October 1 at 2:00 p.m.?

25          MR. HENRIKS:  I have -- I have -- this is -- we

38

1  have a status conference; correct?  Or this is another
2  motion to dismiss.  Yes, I have -- I have a deposition that
3  I can't -- I can't possibly continue this.  I can't do the
4  1st.  I'm sorry, your Honor.
5            THE COURT:  No, that's fine.  That's fine.
6            Mr. Layfield, you said you'd prefer not to have
7  the October 15 at 2:00, are you able to do that?
8            MR. LAYFIELD:  Yeah, and that's fine, I just wish
9  we could get our timing a little bit better, so --
10            THE COURT:  Understood.
11            MR. LAYFIELD:  -- I can actually do it at 2:00
12  instead of two hours later.
13            THE COURT:  Or two weeks later, I think you mean.
14  Yeah, no I -- to the extent possible, it's always nice to
15  combine the hearings, but it looks as if that won't work in
16  this instance.  So I'll continue the Pimentel matter to
17  October 15th at 2:00, but that may well go off anyway if I'm
18  able to issue something that definitively resolves that
19  issue and I'll go ahead and I guess -- for calendar
20  management purposes, I generally continue the status
21  conference to the -- in the main case to parallel other
22  proceedings, so I'll continue the status conferences in the
23  Layfield case and the Layfield and Barrett case to the
24  October 1 date, which I think that's 2:00 o'clock.  If it
25  turns out to be 1:00 then it will be whatever the time of

39

1 the other hearing is, but I anticipate that that will be

2 with no appearances required for anybody, except the people

3 involved in the matter that's on for -- that's already on

4 for October 1.

5          All right.  Anything else for today?

6          MR. LAYFIELD:  Your Honor, just to -- just to

7 clarify.  I believe the Hatfield and Gravax firm has filed

8 another 12(b)(6) motion against Mr. Pimentel and it's set

9 for October 1st at 2:00 p.m.  So Ms. Henriks contention that

10 she's at a deposition and can't appear, I mean is she

11 suggesting that she's not appearing at the Hatfield and

12 Gravax motion?  That's why I was suggesting that we have the

13 hearing on that date.

14          THE COURT:  I recall that there is --

15          MS. HENRIKS:  I --

16          THE COURT:  -- that motion pending.  I didn't know

17 whether it was scheduled for October 1; Ms. Henriks is --

18          MS. HENRIKS:  I do see it on the calendar, but

19 that's again -- I do have a deposition in the morning and I

20 have other lawyers that can cover, depending on the

21 tentative of course, and I just -- as far as this particular

22 motion -- and so I don't want to schedule -- in case that

23 deposition goes forward, so I will have already somebody

24 else covering for me.  So I don't know -- I prefer to be

25 personally present on Mr. Layfield's -- I mean the person

40

1  who will argue, if there is a need for argument for Mr.

2  Layfield's motion.

3          THE COURT:  Okay.  Well I'm going to stick with

4  the continuance of the Pimentel matter that's on for today

5  to October 15 at 2:00.  I -- it may well be that no

6  appearance will be necessary then anyway, so I suspect that

7  we're not going to have to run into the problem of multiple

8  appearances being required, but I'll see.

9          And in the meantime, I'm continuing the status

10  conferences in the Layfield and Layfield and Barrett cases

11  to October 1 at 2:00 p.m. and in other respects, I'm

12  adopting the tentative rulings.

13          I think that's everything.  Thank you, all.

14      (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

41

1        I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Tara Jauregui             8/25/2020
  Transcriber               Date

6

7 FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8

9 /s/L.L. Francisco
  L.L. Francisco, President
10 Echo Reporting, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*